Mr. Bill Ford, Commissioner Arkansas State Bank Department 323 Center Street, Suite 500 Little Rock, Arkansas 72201
Dear Mr. Ford:
This is in response to your request for an opinion on the following question:
 Whether the City limit territorial restrictions for messenger service activities as found in A.C.A. § 23-32-701(b)(9) (Supp. 1993) have been repealed or amended by implication by the expansion of the branching territorial restrictions found in A.C.A. § 23-32-1202 (Supp. 1993)?
It is my opinion that the answer to your question is "no."
Your question requires analysis of two Arkansas statutes. As you note in your request, Act 113 of 1913 is the original act which delineated the powers of state banks in Arkansas. The act is codified at A.C.A. § 23-32-701 (Cum. Supp. 1993) and has been amended many times since its original enactment. It was in 1973, by virtue of Act 319 of 1973, when state banks were first authorized to provide "messenger services." This particular provision is now codified at A.C.A. § 23-32-701(b)(9) and provides that "[a bank] may provide messenger service within the city of its domicile by means of an armored car, or otherwise, pursuant to an agreement wherein it is specified that the messenger is the agent of the customer rather than of the bank." You note that in this same year (1973), Act 228 of 1973 was enacted which authorized limited branching by state banks. This act authorized banks to branch, with the approval of the Commissioner, within the corporate limits of the city or town in which the bank's main office was located. The act also allowed banks to establish branches within any incorporated city or town with a population of two hundred fifty or more if there was no legally chartered bank then having its main office in that city or town, provided that the branch was in the same county as the bank's main office. It also allowed branching in any "planned community development" with a population of two hundred and fifty or more, if within the same county of the bank's main office.
Your question arises because in 1988 the legislature enacted Acts 2 and 12 of 1988 (4th Ex. Sess). These acts authorized the gradual expansion of state branch banking. County-wide branching was authorized upon the effective dates of these acts, contiguous county branching after December 31, 1993 and statewide branching after December 31, 1998. Your question is whether the enactment of these acts has the effect of impliedly amending or repealing the city territorial messenger service restrictions of A.C.A. § 23-32-701(b)(9), and whether in fact, messenger service authority is now co-extensive with a bank's branching authority.
In Arkansas, implied amendments, as well as implied repeals, are not favored. Fireman's Fund Ins. Co. v. Polk County,260 Ark. 799, 543 S.W.2d 947 (1976). It has been held that the legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the prior law that they cannot stand together. Arnold v. City of Jonesboro,227 Ark. 832, 302 S.W.2d 91 (1957). See also Sutherland, Stat. Const. § 22.13 (4th Ed). The two acts implicated by your question simply do not meet this test. From its inception, a state bank's authority to provide messenger services has not been coextensive with its branching authority. In 1973, with the adoption of Act 319, the legislature authorized messenger services only in the city of the bank's domicile. That same legislative session, with the adoption of Act 228, the legislature authorized not only city-wide branching, but branching in certain other cities, towns and planned community developments in the county where the bank's main office was located. There is no indication from the adoption of these acts that the legislature intended messenger service authority to be coextensive with branching authority.
Additionally, in my opinion, the fact that the provision of messenger services by national banks has sometimes been considered "branch banking" does not affect this result. As you note, in the case of First National Bank v. Dickinson,396 U.S. 122 (1969), the United States Supreme Court held that a national bank's armored car service constituted "branch banking" and thus could not be undertaken in Florida, which at that time did not authorize its state banks to branch. You cite this case in your request for the proposition that "historically, messenger services have been viewed as relating to branching," and presumably that for this reason, the authority to provide messenger services should be coextensive with branching authority. In my opinion, however, a federal court's construction of a federal definition of "branching" so as to include armored car services, for purposes of a prohibitory provision of state law, and in order to achieve the federal legislative intent of competitive equality between state and federal banks, is not authority for the proposition that a state court would find an implied repeal of one state law by another for purposes of affirmatively granting expanded messenger service authority.
Finally, you note that federal law allows national banks to provide messenger services and that the federal law does not contain any territorial restrictions, citing 12 C.F.R. § 7.7490. You state that in order to retain competitive equality between state and national banks, the Department would favor an expansion of state messenger services. It should be noted, however, that after the Dickinson decision, 12 C.F.R. 7.7490 was amended to add a sentence qualifying the authority of national banks to provide messenger services. The last sentence now states that: "[i]n some States, however, this power may be limited by the branching provision of 12 U.S.C. 36 and the bank would then be required to consider those aspects of the transaction which might give the bank advantages over State chartered banks in its competition for customers." See also Jackson v. FirstNational Bank of Gainesville, 430 F.2d 12000 (5th Cir. 1970),cert. denied, 401 U.S. 947 (1971). A national bank's messenger service authority is therefore dependent in some fashion upon state branching laws.
It is therefore my opinion that the answer to your question is "no;" no implied repeal or amendment has been effected. If expanded messenger service is desirable, this result must be achieved expressly, through legislation of the General Assembly.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh